Coca Cola Bottling Works, Inc., *v.* Tate.

(Division B. Feb. 1, 1943. Suggestion of Error Overruled March 1, 1943.)

L. L. Martin, of Macon, for appellant.

J. A. Phillips, of Macon, for appellee.

**Alexander, J.,** delivered the opinion of the court.

Appellee was plaintiff in a suit against appellant for damages alleged to have been suffered by drinking a bottled beverage which was manufactured by the defendant and which contained broken glass. We have carefully examined the testimony upon the issue of liability and conclude that it was an issue for the jury's determination whether the beverage was manufactured by defendant and whether plaintiff suffered some injury from bits of broken glass contained in the bottle when manufactured. The suit is upon implied warranty. The defendant was not entitled to a directed verdict upon the contention that the evidence was insufficient to show the status of plaintiff as a customer. We find no error in submitting to the jury the issue of liability and such judgment is affirmed.

Appellant contends that the verdict of $2,500 is under the evidence excessive and that the cause should be remanded for a new trial. As to the nature and extent of the injury, we quote from the testimony of plaintiff: ''There was some left in the bottle. I was in a hurry to go, I turned the coca cola up hurrying to drink it. When I did I felt something went into my throat. I thought it was glass, I set the bottle down. I turned it up so fast I got choked. I ran my finger down my throat to get whatever it was I had swallowed into my throat to get it out but evidently I didn't and in doing that I started coughing. It must have cut the inside of my throat. When I coughed the palm of my hand was full of blood. It came from either the inside of my mouth or throat. I just wiped my hand on my dress and set the bottle down and told Mr. Cade I had swallowed some glass.'' And again: ''I knew there was something going down my throat was not right. It felt like glass. That was my first thought it was as it cut my throat going down.'' Also: ''For several days I had a gagging feeling in my throat like something had lodged in it. I was gagging constantly, clearing my throat. About a week or ten days after that I awoke one morning I had to clear my throat. When I did I spit up phlegm and in this was streaks of blood. That excited me and I went straight to Dr. Green and told him I had coughed up this blood. Then Dr. Green took me in his office, looked in my throat as best he could, said he couldn't find a thing in my throat. He took out his stethoscope and listened to my lungs, told me he was not equipped to give me a thorough examination but if I continued to spit up blood he would advise me to go immediately and have a thorough examination made.'' She further testified that she spat up blood and had a burning sensation in her lungs and a raw feeling in her chest; that these symptoms continued for several months; that physical pain is suffered only when coughing; and that these symptoms cause nervous-

ness and worry. Plaintiff consulted Dr. Green who found no objective symptoms but advised more complete examination if the symptom described persisted. One of the doctors recommended was Dr. Doster but plaintiff did not consult him, her explanation being her financial inability so to do. However, the president of the defendant company had examinations made by Dr. Doster. Plaintiff introduced no physician but several were introduced by the defendant. From the undisputed testimony of these physicians, it seems clear that there is no foreign body such as bits of glass in the stomach or lungs of plaintiff, and that if a piece of glass had been taken into either organ any effect was temporary and no untoward symptom or permanent damage remained therein. Plaintiff concedes on appeal that there is no contention that there is glass in either the lungs or stomach but in the chest. However, the X-ray examination failed to reveal its presence, and the testimony of the medical experts denying such presence is uncontradicted.

We are left therefore with only speculation or conjecture as to the presence of glass in the throat or chest, such conjecture being supported only by the subjective symptoms of plaintiff and the presence of blood streaks occasionally in sputum or phlegm. The assurance of the medical experts appears not sufficient to allay the emotional distress of plaintiff, yet we are not willing to question the fact of such anxieties nor their ability to create nervousness and other subjective symptoms as to which plaintiff alone can testify. The physical injury appears small but it is sufficiently established to authorize a consideration of the plaintiff's reaction thereto as an element of damage.

In Coca Cola Bottling Works, Inc., v. Petty, 190 Miss. 631, 200 So. 128, plaintiff was made sick by the fact, and the contemplation thereof, that she had drunk a beverage containing worms and other foreign matter. The award of $500 was affirmed. In Coca Cola Bottling Works v.

Simpson, 158 Miss. 390, 130 So. 479, 72 A. L. R. 143, the award was $2,500 but the injury resulted in ptomaine poisoning and there was a conflict whether the injury was temporary or permanent. The foreign substance was the decomposed part of a rat and the plaintiff suffered for more than a year as a result of the poisoning. In Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305, 306, an award of $2,500 was upheld, but the court stated: "Mrs. Lyons suffered severe internal injuries on account of swallowing the broken glass in the Coca-Cola, and she testified that she suffered for many months from the effects of the glass in her stomach. There was about a tablespoonful of the broken glass in the bottle." In Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628, the damages allowed were $500 although the foreign substance consumed in the beverage was a part of a mouse. In Meridian Coca Cola Bottling Co. v. Illges, 187 Miss. 27, 191 So. 817, the foreign matter was a fly and the award was $375. Wilson v. Rich, 163 Miss. 403, 141 So. 287, is in point on principle although not in fact. An award of $500 was held proper where objective symptoms showed no serious and permanent injury although subjective symptoms did do so.

With due regard to the necessity for preserving the right of the trial juries to determine issues of fact, we feel that this is a case where the amount of the verdict is inconsistent with a reasonable and dispassionate appraisal of the actual damages proven and a just disposition of the issue requires a reversal of the cause for hearing upon the issue of damages alone. However, if appellee will within thirty days enter a remittitur in this court of one-half of the judgment awarded, the cause will be affirmed in the sum of $1,250.

Affirmed with remittitur.