ROBERTSON, Justice:
James Willis Hughes, Administrator of the Estate of his wife, Edith Rowe Hughes, on behalf of himself and their children, appealed from a judgment of the Circuit Court of Attala County, Mississippi, in *340 favor of the Defendant, W & S Construction Company, based upon a jury verdict for the defendant.
About 9:00 P.M., on September 14, 1964, Appellant Hughes and his wife were returning from Starkville, Mississippi, in their 1964 Cadillac Convertible. As he drove through a heavily wooded section of the Natchez Trace, a stray Black Angus cow suddenly loomed up in front of the car. He could not avoid hitting the cow and when he did so, he lost control of the car which skidded down a steep embankment and finally hit a tree. Mrs. Hughes was dead when the car came to rest.
As administrator of the estate, Appellant Hughes sued the Appellee, W & S Construction Company, for damages for the wrongful death of his wife alleging that appellee carelessly and negligently constructed a cattle gap that was not strong enough to contain cattle or that appellee carelessly and negligently left this cattle gap down and thus allowed some cattle to get out of the pasture.
About March 16, 1964, appellee had entered into a contract with the City of Kosciusko to construct two sewage lagoons for the City. In connecting with one of the lagoons, it became necessary to lay a sewer line across a cattle pasture alongside the Natchez Trace belonging to Mat-tox and Rhodes, and an easement across their lands was secured by the City of Kosciusko. Appellee’s foreman and a work crew cut the four-strand barbed-wire fence at a tree and attached the loose ends of the wire to a movable post. They then put two loops of barbed-wire around the tree. This constituted a cattle gap or gate, which could be opened by removing the loops of wire from each end of the movable post and closed by inserting the two ends of the post in the loops of wire around the tree.
The appellee’s foreman, Walter S. Abies, and workmen testified that each time they entered and left the pasture they carefully closed the cattle gap. There was no testimony to the contrary.
William B. Rhodes, who with C. D. Mat-tox, owned the cattle, testified that some of their cattle were missing on Sunday afternoon, August 16th, 1964. Early Monday morning, August 17th, they began to search for their cattle and were able to round up some of them, but were not able to locate all that had escaped. Rhodes testified that on August 17th, he found the cattle gap down and completely pulled around to the side. He did not know how the cattle gap had gotten down or who had pulled it around to the side. Rhodes arrived at the scene soon after the accident and identified the cow that was hit and killed as his cow from a vaccination tag attached to her ear.
After the Plaintiff-Appellant rested, the Defendant-Appellee put on Walter S. Abies as its witness. He testified that the last time his crew opened and closed the cattle gap was on August 4th, 1964, and that they then moved from Lagoon No. 2 to Lagoon No. 1. He again stated that he personally saw that the gap was properly closed. Most of the work crew testified that the August 4th, 1964, occasion was the last time they were at the cattle gap, and that it was properly fastened and closed at that time.
We repeat that the cattle were first missed from the pasture on Sunday, August 16th, 1964. The fatal accident occurred on the night of September 14, 1964, about a month after the cattle escaped.
Appellant assigned as error the giving of two instructions dealing with negligence of the appellant in the manner in which he drove his car. These instructions were:
INSTRUCTION NO. 5 FOR DEFENDANT
“The Court instructs the jury for the defendant, W & S Construction Company, Inc., that the driver of a vehicle must operate said vehicle so as to be able to stop within the range of his vision, and he must also drive said vehicle in a manner that he can actually *341 discover an object, perform the manual acts necessary to stop and bring his vehicle to a complete halt, if necessary, to avoid collision with objects or animals on the highway, and if you believe from the evidence in this case that James Willis Hughes, the husband of Mrs. Edith Rowe Hughes, was not driving his vehicle so as to be able to stop within the range of his vision and thus avoid ■colliding with the cow, and thereafter losing control of his vehicle, causing it to strike a tree of the highway with great force, then, in that event, Mr. Hughes was negligent, and if you further believe from the evidence in this case that such negligence, if any, was the ■sole proximate cause of the accident and resulting death of Mrs. Edith Rowe Hughes, then it is your sworn duty to find for the defendant, W & S Construction Company, Inc.”
INSTRUCTION NO. 12 FOR DEFENDANT
“The Court instructs the jury for the ■defendant, W & S Construction Company, Inc., that if you find from the evidence in this case that immediately prior to the accident complained of herein, that James Willis Hughes was operating his vehicle at such a rate of speed that he could not stop the vehicle to avoid ■collision with objects within the range of his vision, then as a matter of law, he was negligent; and if you further believe from the evidence that such negligence, if any, was the sole proximate ■cause of the accident and resulting death •of Mrs. Edith Rowe Hughes, then it is your sworn duty to find for the defendant, W & S Construction Company, Inc.”
Appellant contends that similar instructions were roundly condemned in the case •of Bryan Bros. Packing Co. v. Grubbs, 251 Miss. 52, 168 So.2d 289 (1964). There is a vital difference between the two cases. The Bryan Bros. Packing Co. case arose out of an accident that happened in broad daylight; the instant case resulted from a fatal accident occurring at night.
In the case of Frazier v. Hull, 157 Miss. 303, 310-311, 127 So. 775, 777 (1930), this Court said:
“ * * * it is negligence to drive an automobile, at night, at a greater rate of speed than will permit the driver thereof to avoid injury to persons or vehicles zvhen they come within the range of the lights on the front of the automobile. 1 Berry, Automobiles (6th Ed.), § 186; 1 Blashfield’s Cyc. of Automobile Law, page 350, § 17; 14 A.L.R. 794, note. Had the appellee observed this rule, the accident would not have occurred; and, as her own evidence disclosed that she did violate it, the jury should not have been permitted to find that her negligence did not contribute to the appellant’s injury.” (Emphasis added.)
Other cases explaining the different rule of negligence as to night driving are: Robertson v. Welch, 242 Miss. 110, 134 So.2d 491 (1961); Jackson City Lines v. Harkins, 204 Miss. 707, 38 So.2d 102 (1948); Rhodes v. Fullilove, 161 Miss. 41, 134 So. 840, 841 (1931). Another night visibility case is Kettle v. Musser’s Potato Chips, Inc., 249 Miss. 212, 162 So.2d 243 (1964).
However, it is not necessary for us to decide whether these two instructions were properly or erroneously granted, because the appellant’s case was based sqrtarely upon the negligence of the defendant in carelessly or negligently constructing the cattle gap or in carelessly or negligently leaving the cattle gap down and allowing the cattle to escape, and the appellant did not make out a case against this defendant.
The appellant produced no witness to testify that the appellee did not properly close and fasten the cattle gap each time its work crew entered and left the pasture of Mattox and Rhodes. There was no evidence whatsoever that the ap-pellee was negligent in any manner. There was no evidence that the cattle escaped *342 because of negligence on the part of ap-pellee. The appellant simply did not make out a case for the jury. This, of course, is not a case where the doctrine of res ipsa loquitur would apply. In order to make it a jury question, there must he some evidence that the appellee was negligent in some respect. In this case there was none. No question as to the construction of the cattle gap was involved because the cattle gap was not only not trampled down, but was pulled completely over to the side of the right-of-way.
Appellant did not bring this action under Section 4876-05, Mississippi Code of 1942, Annotated (Recom.1956), which merely provides that in the case of livestock being at large on highways and causing wrecks, the burden is on the owner of such livestock to prove lack of negligence. However, even if such burden had been upon the appellee here, the burden was fully sustained. This statute was involved in the case of Pongetti v. Spraggins, 215 Miss. 397, 61 So.2d 158, 34 A.L.R.2d 1277 (1952). In that case an action was brought by a motorist against the owner of cattle because the motorist had run into a stray animal on the highway. This Court held that only when the owner had negligently or intentionally permitted the animal to run at large was there liability, and that the proof by the owner of due care to restrain the animal precluded the imposition of liability and that the presence of the cattle on the highway was not prima facie evidence of negligence or alone sufficient proof of negligence upon which to predicate liability.
In Pongetti, supra, the Court, in affirming the granting of a peremptory instruction for the defendant, used the following language:
“ * * * At the conclusion of the testimony the court granted a peremptory instruction for the defendant, and judgment was entered in favor of the defendant. * * * But the appellant’s attorneys contend that the doctrine of res ipsa loquitur should be applied in a case of this kind, and that proof of the fact that the appellee’s calf was on the highway gives rise to an inference of negligence, and that the jury should have been permitted to say whether the appellee’s explanation was sufficient to exculpate him from the charge of negligence. * * * The statute does not make proof of the fact that the animal was at large on the highway prima facie evidence of negligence on the part of the owner, or prima facie evidence that the owner knowingly permitted such animal to run at large on the highway. The plaintiffs cause of action is necessarily predicated upon the theory of negligence. * * * no facts were proved which tended to support the general allegation of negligence other than the fact that the calf was at large on the highway; and the defendant’s testimony, which was neither disputed nor discredited, showed that the defendant had used all proper means to prevent the animal from escaping and that the animal was on the highway without fault on the part of the owner or keeper. * * * we have concluded that we should align ourselves with those courts which hold that the owner of an animal is liable for damages in a case of this kind only when he negligently or intentionally permits the animal to run at large on the highway. * * * the plaintiff offered no proof to show that the defendant’s calf was at large on the highway with the defendant’s knowledge or consent, or that the defendant had failed to exercise due care to prevent the calf from escaping from its enclosure. The defendant’s proof on the other hand showed that * * * he had used reasonable care to restrain the calf from being at large, and that the calf had escaped without fault or negligence on his part. This testimony, which was neither denied nor discredited, was sufficient to overcome any inference or presumption of negligence on the part of the defendant that might have arisen from the proof of the fact itself that the calf was at large on the highway. The defendant, *343 to exculpate himself from blame, was not required to show how the calf had escaped from the plaintiffs [defendant’s] enclosure, or why the calf was at large on the highway. These facts were perhaps as completely unknown to the defendant as to the plaintiff. The defendant zvas only required to shozv, as he did show, that he had exercised reasonable care to prevent the calf from escaping from the defendant’s enclosure, and that he was not at fault in permitting the calf to escape or to he at large on the highway. * * * ” (Emphasis added.)
This suit is based on common law negligence. The undisputed evidence in this case was that the foreman and work crew of the appellee were last at the cattle gap on August 4th, 1964, when they properly closed and fastened the cattle gap. The cattle escaped on August 16th, 1964, twelve days later. There was no proof whatsoever that the work crew of the appellee did not properly fasten and close the cattle gap. The appellee was entitled to a peremptory instruction.
Other cases, holding that the burden of proof is on the plaintiff to show that the defendant was the party actually guilty of the negligence proximately causing the injury, include: Magnolia Petroleum Company v. Williams, 222 Miss. 538, 76 So.2d 365 (1954); Blizzard v. Fitzsimmons, 193 Miss. 484, 10 So.2d 343 (1942); Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613 (1936).
In view of the fact that a peremptory instruction or directed verdict should have been given for the defendant, the deciding of the question of whether any erroneous instructions were granted becomes irrelevant and immaterial. The granting of the two instructions questioned, even if erroneous, would constitute harmless error. Cases supporting this rule are: Wallace v. J. C. Penney Co., Inc., 236 Miss. 367, 109 So.2d 876 (1959); Murry Chevrolet Company v. Cotton, 169 Miss. 521, 152 So. 657 (1934); Lizana v. Brown Realty Company, 146 Miss. 758, 111 So. 867 (1927). This rule was also applied by this Court in the case of Union Bankers Insurance Company v. May, 227 Miss. 881, 87 So.2d 264 (1956), and Horton v. Jones, 208 Miss. 257, 44 So. 2d 397, 15 A.L.R.2d 824 (1950). It follows, therefore, that the judgment of the lower court should be and is affirmed.
Judgment affirmed.
ETHRIDGE, C. J., and JONES, BRADY and INZER, JJ., concur.